**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**ANDERSON DIVISION**

MIKAYLA HILL,

        Plaintiff,

v.

LEXISNEXIS RISK SOLUTIONS, INC.,

        Defendant.

**Case No.:** 8:24-cv-2643-TMC

**COMPLAINT AND JURY TRAIL DEMAND**

## COMPLAINT

Mikayla Hill ("Plaintiff") brings this action on an individual basis, against LexisNexis Risk Solutions, Inc. ("Defendant" or "Lexis") for actual, statutory, and punitive damages and costs, and attorney's fees, for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.*

## INTRODUCTION

1.  The computerization of our society has resulted in a revolutionary increase in the accumulation and processing of data concerning individual American consumers. Data technology, whether it is used by businesses, banks, the Internal Revenue Service, or other institutions, allows information concerning individual consumers to flow instantaneously to requesting parties. Such timely information is intended to lead to faster and better decision-making by its recipients and, in theory, all of society should ultimately benefit from the resulting convenience and efficiency.

2.   However, unfortunately this information has also become readily available for, and subject to, mishandling and misuse. Individual consumers can and do sustain substantial damage, both economically and emotionally, whenever inaccurate or fraudulent information is disseminated and/or obtained about them.

3.   The ongoing technological advances in the area of data processing have resulted in a boon for the companies that accumulate and sell data concerning individuals' credit histories and other personal information. Such companies are commonly known as consumer reporting agencies ("CRAs").

4.   CRAs sell information to readily paying subscribers (i.e., retailers, landlords, lenders, potential employers, and other similar interested parties), commonly called "consumer reports," concerning individuals who may be applying for retail credit, housing, employment, or a car or mortgage loan.

5.   Since 1970, when Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), federal law has required CRAs to implement and utilize reasonable procedures "to assure maximum possible accuracy" of the personal, private, and financial information that they compile and sell about individual consumers.

6.   "Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies."   *Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

7.   Congress made the following findings when it enacted the FCRA in 1970:

(a)    The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public

2

> confidence which is essential to the continued functioning of the banking
> system.
>
> (b)     An elaborate mechanism has been developed for investigating and
> evaluating the credit worthiness, credit standing, credit capacity, character,
> and general reputation of consumers.
>
> (c)     Consumer reporting agencies have assumed a vital role in assembling and
> evaluating consumer credit and other information on consumers.
>
> (d)     There is a need to ensure that consumer reporting agencies exercise their
> grave responsibilities with fairness, impartiality, and a respect for the
> consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).

8.    Thus, one of the fundamental purposes of the FCRA is "to require that consumer

reporting agencies adopt reasonable procedures for meeting the needs of commerce for

consumer credit, personnel, insurance, and other information in a manner which is fair and

equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper

utilization of such information in accordance with the requirements of this subchapter."  15

U.S.C.  §  1681(b).    Accordingly,  "[t]he  FCRA  evinces  Congress'  intent  that  consumer

reporting  agencies,  having  the  opportunity  to  reap  profits  through  the  collection  and

dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*,

115 F.3d 220, 225 (3d Cir. 1997).

9.    The preservation of one's good name and reputation is also at the heart of the

FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all
> sorts of computerized data banks, the individual is in great danger of having his
> life and character reduced to impersonal "blips" and key-punch holes in a stolid
> and unthinking machine which can literally ruin his reputation without cause, and
> make him unemployable or uninsurable, as well as deny him the opportunity to
> obtain a mortgage or buy a home. We are not nearly as much concerned over the
> possible mistaken turn-down of a consumer for a luxury item as we are over the
> possible destruction of his good name without his knowledge and without reason.
> Shakespeare said, the loss of one's good name is beyond price and makes one
> poor indeed.

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)] (emphasis added).

10. Since 1970, when Congress enacted the Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et. seq.*, ("FCRA"), the federal law has required CRAs to have in place and to utilize reasonable procedures "to assure the maximum possible accuracy" of the personal and financial information that they compile and sell about individual consumers.

11. The FCRA also requires CRAs to conduct a reasonable reinvestigation to determine whether information disputed by consumers is inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which the CRA receives the notice of dispute from the consumer. This mandate exists to ensure that consumer disputes are handled in a timely manner and that inaccurate information contained within a consumer's credit report is corrected and/or deleted so as to not prevent said consumer from benefiting from his or her credit and obtaining new credit.

12. In light of these important findings and purposes, Congress specifically noted "a need to insure that [CRAs] exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." *See* 15 U. S. C. § 1681(a)(4).

13. The FCRA also requires furnishers of information, a creditor or other third party that provides information about consumer to a CRA, upon notice, to conduct a reasonable reinvestigation of all disputes with regard to the completeness or accuracy of any information it provides to the CRAs regarding a consumer and modify, delete, or permanently block any items of information found to be inaccurate, incomplete, or unverifiable after said reinvestigation is completed.

4

14. Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports, in violation of the FCRA, 15 U.S.C. § 1681e(b).

15. As part of this action, Plaintiff seeks actual, statutory, and punitive damages, costs, and attorneys' fees from the Defendant for its willful and/or negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, as described herein.

## **PARTIES**

16. Mikayla Hill ("Plaintiff") is a natural person residing in Belton, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

17. Defendant LexisNexis Risk Solutions, Inc ("Defendant") is a Delaware corporation doing business throughout the United States, including the State of South Carolina and in this District, and has a principal place of business located at 1000 Alderman Drive, Alpharetta, Georgia 30005. LexisNexis can be served at its registered agent, CT Corporation System, 75 Beattie Place, Greenville, South Carolina, 29601.

18. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) and is regularly engaged in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d), to third parties.

19. Defendant is also a "reseller" as that term is defined by 15 U.S.C. § 1681a(u).

## **JURISDICTION AND VENUE**

20. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

21. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**FACTS**
**Summary of the Fair Credit Reporting Act**

22. The FCRA governs the conduct of consumer reporting agencies in an effort to preserve the integrity of the consumer banking system and to protect the rights of consumers to fairness and accuracy in the reporting of their credit information.

23. The FCRA was designed to protect consumers from the harmful effects of inaccurate information reported in consumer reports (commonly referred to as "credit reports"). Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. *See* 15 U.S.C. § 1681(a).

24. Specifically, the statute was intended to ensure that "consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. *See* 15 U.S.C. § 1681(b).

25. To that end, the FCRA imposes the following twin duties on consumer reporting agencies: (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports (15 U.S.C. § 1681e(b)); and (ii) consumer reporting agencies must reinvestigate the facts and

circumstances surrounding a consumer's dispute and timely correct any inaccuracies (15 U.S.C. § 1681i).

26. The FCRA provides consumers with a private right of action against consumer reporting agencies that willfully or negligently fail to comply with their statutory obligations under the FCRA.

### The "Mixed File" Problem

27. A recurring and *known* issue within the credit reporting industry is the creation of "mixed files."

28. A "mixed file" occurs when personal and credit information belonging to Consumer B appears in one or more of Consumer A's credit files.

29. The Federal Trade Commission defined a mixed credit file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is subject to that Consumer Report." *F.T.C. v. TRW, Inc.*, 784 F. Supp. 361, 362 (N.D. Tex. 1991).

30. "Mixed files" create a false description and representation of a consumer's credit history and result in the consumer not obtaining credit or other benefits of our economy.

31. Defendant's procedures for matching consumer information to a consumer report often cause the mixing of one consumer with another.

32. Another consequence of mixed files is the resulting disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge or consent, or both. This occurs when a consumer's file is mixed with that of another consumer, and either of those consumers applies for credit, housing, insurance, or employment, and Defendant sells information pertaining to one consumer in response to the

application of the other. This violates the consumer's privacy and also greatly increases their risk of identity theft.

### The "Mixed File" Problem is Known to Defendant

33. Resellers purchase consumers' credit information from other CRAs, such as non-parties Experian, Equifax, and Trans Union.

34. Once Defendant receives consumer credit information from other CRAs, it assembles and merges the information into a credit report, which it then sells to third parties.

35. Resellers, like Defendant, are subject to the FCRA's requirement to use reasonable procedures to assure maximum possible accuracy of the information in the consumer reports they sell.  15 U.S.C. § 1681e(b).

36. Courts have repeatedly held that resellers, like Defendant, do not meet the requirements of Section 1681e(b) by merely reproducing the information furnished to them by other credit bureaus.  *See, Rogue v. CoreLogic Credco, LLC*, No. 19-cv-00260-BLW, 2020 WL 7061745 at *4 (D. Idaho Dec. 2, 2020) ("[D]istrict courts have repeatedly rejected Credco and other resellers' arguments that a reseller is only required to accurately reproduce the information furnished to it by other credit bureaus.  These courts have, instead, found that, as a matter of law, a reseller can be subject to liability under § 1681e(b) for failing to follow reasonable procedures to assure the maximum possible accuracy of the information it provides on a consumer"); *Starkey v. Experian Information Solutions, Inc.*, 32 F. Supp. 3d 1105, 1109-11 (C.D. Cal. 2014) (rejecting Credco's argument that its report was "accurate" because it "fully and accurately included all of the information [the CRAs] provided," holding that a reseller, like other consumer reporting agencies, must employ reasonable procedures to assure the maximum possible accuracy of the information in its report); *Dirosa*

*v. Equifax Information Servs, LLC*, 2014 WL 3809202, at \*3 (C.D. Cal. Jan. 21, 2014) (rejecting Credco's argument that it was not liable under § 1681e(b) because it "fully and accurately included all of the information [the CRAs] provided"); *Ocasio v. CoreLogic Credco, LLC*, 2015 WL 5722828, at \*\*3-4 (D. NJ. Sept. 29, 2015) (rejecting Credco's argument that its procedures were reasonable as a matter of law under § 1681e(b) "because it accurately compiled and reported information collected from the credit bureaus"); *Willoughby v. Equifax Svs., LLC*, 2013 WL 8351203, at \*\*2-3 (N.D. Ala. Aug. 12, 2013) (finding that resellers are subject to the same requirements under § 1681(b) as other consumer reporting agencies to follow reasonable procedures to assure the accuracy of its reports); *Waterman v. Experian Information Solutions, Inc.*, 2013 WL 675764, at \*\*2-3 (C.D. Cal. Feb. 25, 2013) (same); *Dively v. Trans Union, LLC*, 2012 WL 246095, at \*\*3-4 (E.D. Penn. Jan. 26, 2012) (same).

37. The Federal Trade Commission has also explained that "[p]ersons who purchase consumer reports for resale (also known as 'resellers') are covered by the FCRA as consumer reporting agencies, and have all the obligations of other CRAs…" Prepared Statement of Fed. Trade Commiss. On the Fair Credit Reporting Act Before the Senate Banking Committee on Banking, Housing, and Urban Affairs, 2003 FTC LEXIS 101, 14-15 (July 10, 1993).

38. Notwithstanding this notice, Defendant continues to sell consumer reports without sufficient independent investigation, audits, research, or review to assure that the information in the reports is accurate.

39. This lack of procedures is highlighted by Defendant's lack of procedures to prevent selling mixed files.

9

40. Defendant is aware that the CRAs it purchases information from have a long history of mixed file problems.

41. Defendant knows of the CRAs' practices of mixing consumer files, but Defendant refuses to implement any procedures to adequately review or analyze another CRA's data to determine if it is providing information from a mixed file.

42. Despite knowing about the lawsuits and government enforcement actions, Defendant took no actions to assure accuracy of the information it reported, although it was obvious that Plaintiff's file was mixed with the file of a different consumer who had a different name, social security number, address history, insurance history, and credit accounts.

43. Instead, as is the case here, Defendant resold consumer information without conducting any level of review as to its accuracy. Defendant did so even when the data had obvious red flags of a mixed file.

44. Defendant has also been on notice for years that its policies were insufficient under the FCRA regarding the accuracy of its information: through many private actions filed against it.

45. Despite knowing the breadth and severity and even the consequences of the mixed file problem, Defendant does not maintain policies and procedures to ensure compliance with its duties under the FCRA.

46. Plaintiff's claims arise out of the Defendant's blatantly inaccurate credit reporting, wherein Defendant published in consumer reports about Plaintiff the information of another consumer because Defendant mixed Plaintiff's credit file with that of an unrelated consumer.

10

**Plaintiff Applies for New Automobile Insurance with Progressive Insurance**

47. In the fall of 2023, Plaintiff sought to acquire a new automobile insurance policy.

48. Accordingly, Plaintiff completed and submitted an insurance application with Progressive to insure Plaintiff's automobile.

49. For Progressive to evaluate Plaintiff's creditworthiness, it needed to obtain copies of her credit files. Plaintiff provided Progressive with her personal identification information, including her Social Security number, and authorized it to obtain copies of her credit files.

50. On October 24, 2023, Defendant sold two consumer reports (called CLUE – Comprehensive Loss Underwriting Exchange – Reports ) about Plaintiff to Progressive in response to Plaintiff's credit application.

**Outcome of Plaintiff's Insurance Application**

51. Progressive received and reviewed Defendant's consumer reports about Plaintiff.

52. Upon information and belief, Progressive denied Plaintiff's insurance application and/or caused Plaintiff to be quoted insurance at a higher rate, in reliance on information contained in the Defendant's consumer reports about Plaintiff.

53. Specifically, Defendant's reports about Plaintiff that were completed and sold to Progressive included four insurance claims filed by someone who was not Plaintiff, which was associated with a vehicle that Plaintiff does not own, and related to incidents in which Plaintiff was not involved.

54. Defendant specifically inaccurately reported the following items of information associated with insurance claims in its consumer report published to Progressive regarding the three insurance claims filed by someone other than Plaintiff: (i) Name: Mikaela Hill

11

(misspelling of Plaintiff's first name); (ii) Driver License No: 00003701XXXX; (iii) Vehicle: Hyundai Sonata; (iv) VIN No:  5NPEB4AC4DH522879.

55. None of the above information belongs to Plaintiff.

56. Upon information and belief the above information belongs to unrelated consumer Mikaela Hill, not Plaintiff Mikayla Hill.

57. The following information on the face of the CLUE reports were actual notice to Defendant that the information it reported did not belong to Plaintiff:

    (a)   Plaintiff's driver's license does not begin with "3701."

    (b)   Plaintiff's first name is spelled "Mikayla" not "Mikaela."

    (c)   Plaintiff lives in South Carolina.

    (d)   The consumer report does not state that Plaintiff Mikayla Hill has ever owned a Hyundai Sonata.

58. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

**Defendant's Reports Produced About Plaintiff to Current Carrier**

59. "Current Carrier" is a registered trademark of LexisNexis Risk Solutions Inc.

60. On October 30, 2023, Defendant completed and sold a Current Carrier report about Plaintiff to one or more third parties, as evidenced from the Defendant's consumer report.

61. The October 30, 2023 report states: "This Current Carrier report is the result of searching for policy history on the individuals in the household."

62. Defendant falsely attributed numerous items of information and insurance claims to Plaintiff in the Current Carrier report.

63. Specifically, Defendant attributed the following inaccurate name, "Mikaela Hill" which was a result of mixing Plaintiff's consumer file with another.

64. Defendant also attributed the following inaccurate driver's license number, "3701xxxx" which was a result of mixing Plaintiff's consumer file with another.

65. Defendant also attributed a "Hyundai Sonata," which Plaintiff never owned, which was a result of mixing Plaintiff's consumer file with another.

**Defendant's Consumer Report Contained Numerous Inaccurate Items of Information**

66. In addition to reporting the inaccurate name "Mikaela Hill," Defendant reported the following four digits of an inaccurate social security number: XXX-XX-0578, which is not Plaintiff's social security number.

67. Defendant also reported the following inaccurate addresses about Plaintiff, which Plaintiff has never been associated with:

(a) 11100 Renda Ct Charlotte, NC;

(b) 3517 Dashiel Drive, Charlotte, NC;

(c) 204 Barton Creek Drive A APT Charlotte, NC;

(d) 6411 Waterford Crest Drive 2636 APT Charlotte, NC;

(e) 4316 Waterford valley Circle 335 APT Charlotter, NC;

(f) 1925 Waycrest Drive SW Atlanta, GA;

(g) 10909 Faringford Court Charlotte, NC;

(h) 5005 Misty Oaks Drive 1132 APT Charlotte, NC;

(i) 5815 Branthurst Drive Charlotte, NC;

(j) 530 Piedmont Ave NE Atlanta, GA ;

13

(k) 2306 Prestigious Lane Charlotte, NC.

68. Defendant also reported the following inaccurate phone numbers as belonging to Plaintiff when they have never belonged to Plaintiff:

(a) 704-597-8665

(b) 980-475-1246

(c) 704-345-1890

69. Defendant also reported inaccurate education records about Plaintiff that belong to the unrelated consumer.

70. Defendant also reported insurance policy records about Plaintiff which belong to an unrelated consumer. Specifically, the name and driver's license number associated with these insurance policy records do not match Plaintiff's. Out of sixteen (16) insurance policy records reported (listing policy numbers, carriers, automobile, and insurance coverage details), twelve (12) of them belong to the unrelated consumer and not Plaintiff.

71. Defendant also reported automobile insurance claim records about Plaintiff which belong to an unrelated consumer. Specifically, the name and driver's license number associated with these insurance policy records do not match Plaintiff's. Out of five (5) insurance claims reported, three (3) (all collisions) belong to an unrelated consumer. The other two (2) claims belong to Plaintiff's husband. Plaintiff actually has no insurance claims.

72. Upon information and belief, the mixed information identified above was published to one or more unidentified third parties, with whom Plaintiff had no relationship, as evidenced by the inquiries on Plaintiff's LexisNexis consumer report.

14

73. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy of the credit information it published and maintained concerning Plaintiff.

74. Plaintiff did not apply for credit and/or insurance with some of the entities listed in the inquiry section of Defendant's report and did not have a relationship with these entities; for example Parallon Revenue Cycle Services, Inc.  As such, Defendant did not have a permissible purpose for furnishing information about Plaintiff to such entities.

75. As Plaintiff had not authorized any of such entities to request Plaintiff's consumer reports from Defendant, nor did Plaintiff enter into any business transaction or relationship which otherwise may have provided a basis for those entities securing a copy of Plaintiff's credit report from Defendant, Defendant disclosed information about Plaintiff to such entities without a permissible purpose and in violation of 15 U.S.C. § 1681b(a).

**Plaintiff's Dispute to Defendant**

76. Upon learning of these inaccurate and mixed file contents included in Plaintiff's Lexis consumer report, Plaintiff requested a copy of her consumer file from Defendant.

77. Plaintiff was able to secure a copy of her consumer file from Defendant on November 3, 2023.

78.

79. Upon reviewing the contents of consumer reports, Plaintiff was shocked at the appearance of numerous pieces of information that did not belong to Plaintiff at all.

80. Shocked, confused, and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant via letter.

81. Plaintiff identified herself and provided sufficient information to Defendant to support her dispute of the inaccurate information contained in her consumer file and report.

82. Plaintiff specifically disputed the inaccurate reporting of addresses, telephone numbers, insurance policies and claims, and all other information associated with "Mikaela Hill" or "Mikaela Arriyam Hill."

83. Plaintiff specifically asked Defendant to investigate and correct its reporting in any consumer reports about Plaintiff.

84. This dispute letter was delivered to and received by Defendant on February 4, 2024.

85. On March 8, 2024, Plaintiff received an updated copy of her Lexis Nexis consumer disclosure wherein the disputed and inaccurately mixed information was deleted.

86. On March 13, 2024, Defendant sent Plaintiff a letter which indicated that it had applied a security freeze to her consumer file, pursuant to her request.

87. However, Plaintiff requested no security freeze from Defendant, leading Plaintiff to think that despite her dispute request, her credit file is still mixed with that of an unrelated and separate consumer and her file needed to be frozen for some reason, which made Plaintiff further concerned.

88. As a result of the "mixed file," Defendant made it extremely difficult and/or practically impossible for Plaintiff to obtain affordable insurance.

89. In fact, due to an inability to secure suitable automobile insurance, Plaintiff had to ultimately renew her automobile insurance with Allstate.

90. Upon information and belief, Plaintiff's renewal of her Allstate insurance was at a rate less favorable to Plaintiff solely due to the inaccuracies Defendant reported about Plaintiff.

91. Plaintiff has not been involved in any automobile accidents and does not have any traffic tickets, yet her rate is high.

92. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

93. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

94. Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs.  Accordingly, Defendant's violations of the FCRA are willful.

95. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, damage by loss of insurance; increased insurance rates; fear of identity theft; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information mixed into Plaintiff's credit file.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**

17

**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**
**(First Claim for Relief Against Defendant)**

96. Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

97. The above-referenced reports are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d).

98. The FCRA imposes a duty on consumer reporting agencies to devise and implement procedures to ensure the "maximum possible accuracy" of consumer reports, as follows:

> Whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates.

15 U.S.C. §1681e(b) (emphasis added).

99. On at least two occasions, Defendant prepared patently false consumer reports concerning Plaintiff and published that information to third parties.

100.     Defendant mixed another consumer's personal and credit account information into Plaintiff's credit file, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

101.     Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

102.     As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her

private financial information and how her private financial information was improperly implicated in the credit applications of another; damage by loss of credit; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

103.    Defendant's conduct, actions, and inactions were willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

104.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II
## 15 U.S.C. § 1681b(a)
### Furnishing a Credit Report Without a Permissible Purpose
### (Second Claim for Relief Against Defendant)

105.    Plaintiff re-alleges and incorporates by reference the allegations set forth in preceding paragraphs as if fully stated herein.

106.    This action involves the willful, knowing, and/or negligent violation of the FCRA relating to the dissemination of consumer credit and other financial information.

107.    Plaintiff is a "consumer" as defined by the FCRA.

108.    Defendant is a consumer reporting agency that furnishes consumer reports as defined and contemplated by the FCRA.

8:24-cv-02643-TMC&#32;&#32;&#32;&#32;Date Filed 04/29/24&#32;&#32;&#32;&#32;Entry Number 1&#32;&#32;&#32;&#32;Page 20 of 21

109.    The FCRA prohibits any consumer reporting agency from furnishing a consumer report unless it has a permissible purpose enumerated under the FCRA, 15 U.S.C. § 1681b(a).

110.    On multiple occasions, Defendant furnished Plaintiff's credit report to various entities without a permissible purpose in response to credit applications of another, which did not involve Plaintiff, and which Defendant therefore had no reason to believe that those various credit-issuing entities intended to use Plaintiff's credit information in connection with a credit transaction involving Plaintiff, in violation of 15 U.S.C. § 1681b(a).

111.    Defendant violated 15 U.S.C. § 1681b(a) by selling Plaintiff's credit report to third parties, whom did not have a permissible purpose to Plaintiff's credit report, in relation to the credit or insurance application of an unrelated consumer.

112.    As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damages including but not limited to, the loss of her right to keep her private financial information confidential; the loss of her right to information about who was viewing her private financial information and how her private financial information was improperly implicated in the credit or insurance applications of another; damage by loss of credit and insurance; loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; and emotional distress including the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials and having another consumer's personally identifying information and credit information, including inquiries, mixed into Plaintiff's credit file.

113.    Defendant's conduct, actions, and inactions was willful, rendering it liable for actual or statutory damages, and punitive damages in an amount to be determined by the

Court pursuant to 15 U.S.C. § 1681n. Alternatively, Defendant was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

114.    Plaintiff is entitled to recover attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i.    Determining that Defendant negligently and/or willfully violated the FCRA;

ii.    Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.    Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.    Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.


RESPECTFULLY SUBMITTED this 29th day of April 2024.


/s/ Dawn McCraw
Dawn McCraw (SCB #105059)
Consumer Attorneys
8245 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw@consumerattorneys.com

Attorneys for Plaintiff,
Mikayla Hill